J-S08001-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
               Appellee :
:
           v. :
:
TERRANCE WONGUS, :
:
               Appellant : No. 2357 EDA 2013

Appeal from the Judgment of Sentence July 10, 2013,
Court of Common Pleas, Philadelphia County,
Criminal Division at No(s): CP-51-CR-0000177-2012,
CP-51-CR-0011899-2011 and CP-51-CR-0014628-2011

BEFORE:  DONOHUE, WECHT and JENKINS, JJ.

MEMORANDUM BY DONOHUE, J.:  **FILED FEBRUARY 27, 2015**

Terrance Wongus ("Wongus") appeals from the judgment of sentence entered on July 10, 2013 by the Court of Common Pleas of Philadelphia County.  For the reasons that follow, we affirm.

This case stems from a string of robberies and thefts that occurred in downtown Philadelphia from November 2010 through April 2011.  Although this case involves several different crimes and victims, the facts necessary to resolve this appeal involve the robbery of only one of the victims, Daniel Bayene ("Bayene").  Therefore, we summarize only the facts relevant to that robbery.

On April 16, 2011, Bayene was working as a parking lot attendant at the EZ Park lot located at 1627 Pine Street in Philadelphia.  That evening Bayene was carrying $300 of EZ Park's money in his pocket and had $1,200

in a safe in his parking attendant booth. At around 8:30 p.m. that evening, a man approached Bayene's booth holding a yellow and white striped umbrella containing a "Smart Tax" logo along with the website address, "TheSmartWayToFile.com." Bayene exited the booth to greet the man when that individual grabbed him around the waist, dragged, and then pushed him into the parking booth. Bayene noticed that his assailant was wearing a black covering over the lower portion of his face. Bayene testified that he believed his assailant was trying to commit a robbery and was going to hurt him. The assailant then reached into his own pocket, at which point Bayene grabbed his arm in order to prevent the assailant from removing his hand from his pocket. After a five-minute struggle, the assailant fled the scene, leaving behind the yellow and white striped umbrella. Bayene then proceeded to contact EZ Park management and the police.

Bayene was unable to identify Wongus as his assailant from a photo array. Bayene was also unable to identify Wongus at trial. However, Jessica Brown ("Brown"), Wongus' fiancée at the time of the robbery, told police that the yellow and white striped umbrella belonged to her. Brown explained to police that Wongus had told her that he lost the umbrella around the time Bayene's robbery occurred.

On May 26, 2011, police arrested Wongus in connection with the string of robberies and thefts, including the robbery of Bayene. On May 3, 2013, a

jury found Wongus guilty of two counts of robbery,[1] and one count each of possessing instruments of crime,[2] theft by unlawful taking or disposition,[3] and receiving stolen property.[4] On July 10, 2013, the trial court sentenced Wongus to twenty to forty years of incarceration. On August 8, 2013, Wongus filed a timely notice of appeal. On March 10, 2014, the trial court ordered Wongus to file a concise statement of the errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. On March 27, 2014, Wongus filed a timely Rule 1925(b) statement.

On appeal, Wongus raises the following issues for our review and determination:

> 1. Was the evidence regarding complaining witness [Bayene] insufficient to support Wongus' conviction for [r]obbery?
>
> 2. Should Wongus be awarded a new trial based on the Commonwealth's impermissible references to [his] past criminal conduct?

Wongus' Brief at 4.

We begin with Wongus' challenge to the sufficiency of the evidence relating to Bayene's robbery. In reviewing a challenge to the sufficiency of

---

[1] 18 Pa.C.S.A. § 3701(a)(1)(ii).

[2] 18 Pa.C.S.A. § 907(a).

[3] 18 Pa.C.S.A. § 3921(a).

[4] 18 Pa.C.S.A. § 3925(a).

the evidence, our Supreme Court has provided the following scope and standard of review:

> In evaluating the issue, we must determine whether the evidence admitted at trial and all reasonable inferences derived therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner, supports the jury's finding that every element of the offense was proven beyond a reasonable doubt. **Commonwealth v. Smith**, [] 985 A.2d 886, 894–895 ([Pa.] 2009). The Commonwealth may sustain its burden of proof by means of wholly circumstantial evidence, and the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence. **Commonwealth v. Laird**, [] 988 A.2d 618, 624 ([Pa.] 2010).

**Commonwealth v. Ramtahal**, 33 A.3d 602, 607 (Pa. 2011).

Wongus' challenge to the sufficiency of the evidence is two-fold. First, Wongus argues that there is no evidence that he was the individual that Bayene encountered on the night in question. **Id.** at 12. In support of his argument, Wongus relies on the fact that Bayene was unable to identify him and Brown's testimony at trial that she was mistaken when she originally told the police that the yellow and white striped umbrella belonged to her. **Id.**

We conclude that the evidence was sufficient, when viewed in the light most favorable to the Commonwealth as the verdict winner, to prove that Wongus was the individual who robbed Bayene. Bayene testified that on the night in question, a man approached his booth with a yellow and white

striped umbrella, containing a "Smart Tax" logo and the website address, "TheSmartWayToFile.com." N.T., 4/25/13, at 75-76, 86. After a physical struggle with Bayene, the assailant fled the scene, leaving the umbrella behind. *Id.* at 82-83. Brown, Wongus' ex-fiancée, admitted at trial that she originally told police that this umbrella belonged to her and that Wongus had told her he lost it around the time of this robbery. N.T., 4/26/13, at 93-96. Brown also testified, however, that she was mistaken when she told police that the umbrella belonged to her because she had recently found her umbrella. *Id.* at 104.

Based on the verdict in this case, the jury clearly chose to believe the evidence indicating that Brown had originally told police that the yellow and white striped umbrella was hers and that Wongus had told her he had lost it. Similarly, the jury found not credible Brown's testimony that the umbrella recovered from Bayene's robbery was not hers and the she had recently found her umbrella. As our standard of review indicates, the jury is free to believe all, part, or none of the evidence. *See Ramtahal*, 33 A.3d at 607. It is not for an appellate court "to reweigh the evidence and substitute its judgment for that of the fact-finder." *Commonwealth v. Hanible*, 836 A.2d 36, 39 (Pa. 2003). Therefore, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the Commonwealth produced evidence that Wongus was in possession of the yellow and white striped umbrella found at Bayene's crime scene around the time of Bayene's

robbery. The Commonwealth presented evidence that this umbrella belonged to Brown, Wongus' ex-fiancée. The Commonwealth also presented evidence that Wongus had told Brown that he had lost the umbrella around the time of Bayene's robbery. Accordingly, the evidence was sufficient to identify Wongus as the perpetrator of the robbery.

Second, Wongus argues that the Commonwealth failed to prove the elements of section 3701(a)(1)(ii) of the robbery statute because there was no evidence that a theft occurred, that Wongus threatened Bayene, or that Wongus placed Bayene in fear of serious bodily injury. Wongus' Brief at 13. Wongus asserts that there is no evidence that a theft occurred because the Commonwealth provided no testimony that he tried to take anything from Bayene or that he demanded anything from him. *Id.* Wongus also contends that there is no evidence that he placed Bayene in fear of serious bodily injury because the Commonwealth provided no evidence that he verbally threatened Bayene or that he brandished any weapons in front of him. *Id.*

The robbery statute reads, in pertinent part, as follows:

**(a) Offense defined.--**

(1) A person is guilty of robbery if, in the course of committing a theft, he:

\* \* \*

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]

18 Pa.C.S.A. § 3701(a)(1)(ii).

Section 3701(a)(2) provides that "[a]n act shall be deemed 'in the course of committing a theft" if it occurs in an attempt to commit theft or in flight after the attempt or commission. 18 Pa.C.S.A. § 3701(a)(2). Additionally, the law of this Commonwealth defines serious bodily injury as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." *Commonwealth v. Kubis*, 978 A.2d 391, 398 (Pa. Super. 2009) (quoting *Commonwealth v. Hopkins*, 747 A.2d 910, 915 (Pa. Super. 2000)). This Court has explained:

> "[T]he Commonwealth need not prove a verbal utterance or threat to sustain a conviction under subsection 3701(a)(1)(ii)." *Commonwealth v. Alford*, 880 A.2d 666, 676 (Pa. Super. 2005), *appeal denied*, [] 890 A.2d 1055 ([Pa.] 2005) (quoting *Commonwealth v. Hopkins*, 747 A.2d 910, 914 (Pa. Super. 2000)). "It is sufficient if the evidence demonstrates aggressive actions that threatened the victim's safety. For the purposes of subsection 3701(a)(1)(ii), the proper focus is on the nature of the threat posed by an assailant and whether he reasonably placed a victim in fear of immediate serious bodily injury." *Alford*, *supra* (quoting *Hopkins*, *supra*).

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011).

Our review of the record reflects sufficient evidence to establish each of the elements of section 3701(a)(1)(ii). Bayene stated that on the night in question, he was working as an EZ Park lot attendant with $300 in his

- 7 -

pocket and another $1,200 in a safe in his booth. N.T., 4/25/13, at 71-73. Bayene testified that a man approached his booth, grabbed him around the waist, and then dragged and pushed him into the booth. *Id.* at 79. Bayene stated that he could not see most of his assailant's face because the assailant was wearing a mask covering the lower portion of face. *Id.* Bayene testified that when the assailant proceeded to stick his hand in his own pocket, Bayene held onto the assailant's arm so that he could not take his hand out of his pocket. *Id.* at 79-80. Bayene stated that entire struggle lasted about five-minutes, after which Wongus fled the scene. *Id.* at 82-83.

The fact that Wongus attacked Bayene, while wearing a mask, by dragging him and pushing him into his parking attendant's booth, wherein there was a substantial sum of money from customers paying to park in the lot, supports the inference that Wongus attacked Bayene in order to take that money. Thus, the Commonwealth proved that Wongus was in the course of committing a theft. *See* 18 Pa.C.S.A. § 3701(a)(1), (2). Additionally, we find that Wongus engaged in sufficiently aggressive actions that threatened Bayene's safety, supporting the notion that Wongus placed Bayene in fear of immediate serious bodily injury." *See Hansley*, 24 A.3d at 416. Wongus while wearing a mask, grabbed, dragged, and pushed Bayene into his booth and a five-minute long struggle ensued. Accordingly, we conclude that the evidence was sufficient to sustain Wongus' robbery conviction.

For his second issue on appeal, Wongus argues that he should receive a new trial because two witnesses for the Commonwealth impermissibly referenced his prior criminal conduct. Wongus' Brief at 14-18. First, Wongus claims that the trial court should have sustained his objection to Scott Copeland's ("Copeland")[5] testimony that the police matched a fingerprint from a crime scene to Wongus' fingerprints through use of the Automated Fingerprint Identification System ("AFIS"). *Id.* at 15-16. Wongus contends that this testimony led to the inference that he was involved in prior criminal activity because his fingerprints were on file with the police. *Id.* Wongus asserts that this predisposed the jury to find him guilty in this case. *Id.*

We recognize that "[t]he admissibility of evidence is a matter directed to the sound discretion of the trial court, and an appellate court may reverse only upon a showing that the trial court abused that discretion." ***Commonwealth v. Stokes***, 78 A.3d 644, 654 (Pa. Super. 2013), *appeal denied*, 89 A.3d 661 (Pa. 2014). "Not merely an error in judgment, an abuse of discretion occurs when 'the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.'"

---

[5] Copeland is a Fingerprint Identification Technician with the Philadelphia Police Department. N.T., 4/24/13, at 121.

***Commonwealth v. Montalvo***, 986 A.2d 84, 94 (Pa. 2009) (quoting ***Commonwealth v. McAleer***, 748 A.2d 670 (Pa. 2000)).

We conclude that Wongus' claim is meritless. Copeland did testify that the Philadelphia Police Department ran a fingerprint from one of the crime scenes through the AFIS, which returned a match for Wongus. N.T., 4/24/13, at 127-28. However, when describing the AFIS, Copeland only stated that it is "a database of known fingerprints." ***Id.*** Nowhere in his testimony does Copeland ever state, or even imply, that the AFIS is a database of fingerprints of known or convicted criminals or those who have previously been involved in criminal activity. ***See id.*** at 127-40. Accordingly, we cannot conclude that the trial court abused its discretion in overruling Wongus' objection.

Second, Wongus asserts that the trial court erred in failing to grant his request for a mistrial following Detective Louis Velazquez's ("Detective Velazquez") testimony that the police developed Wongus as a suspect in this case because of his "prior contacts" with police. ***Id.*** at 16-18. Wongus contends that these remarks likewise made the jury aware that he was involved in prior criminal activity and therefore predisposed the jury to find him guilty. ***Id.*** at 17-18.

We conclude that Wongus has waived this claim. Rule 605(b) of the Pennsylvania Rules of Criminal Procedure provides that "[w]hen an event prejudicial to the defendant occurs during trial only the defendant may move

for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." Pa.R.Crim.P. 605(b). Our Court has explained that "in order for a motion for a mistrial to be timely, it must be made when the alleged prejudicial event occurs." *Commonwealth v. Boring*, 684 A.2d 561, 568 (Pa. Super. 1996).[6] Here, Detective Velazquez's prejudicial testimony occurred during trial on April 25, 2013. N.T., 4/25/13, at 215-16. The trial court immediately offered a curative instruction. *Id.* at 216. Wongus did not request a mistrial until the following morning. N.T., 4/26/13, at 3-4. Accordingly, because Wongus did not request a mistrial at the appropriate time, he has waived the issue on appeal.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/27/2015

---

[6] *Boring* implicated Rule 1118(b) of the Pennsylvania Rules of Criminal Procedure. Rule 1118 was renumbered to Rule 605, effective April 1, 2001. *See* Pa.R.Crim.P. 605(b).